UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
ANGEL PEREZ,

                Movant,              MEMORANDUM AND ORDER

  -against-                       Civil Action No.
                                        CV-00-3435(DGT)
UNITED STATES OF AMERICA,

                Respondent.

--------------------------------X

TRAGER, J.:

Movant Angel Perez brings this motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence after he was convicted by a jury of conspiracy to import and to possess with intent to distribute cocaine, importation of cocaine and possession with intent to distribute cocaine. Perez bases his motion on ineffective assistance of counsel at sentencing. For the reasons set forth below, the motion is denied.

**Background**

**(1)**

The charges against Perez stem from his arrest at John F. Kennedy International Airport ("JFK") on January 29, 1997. Perez, traveling with co-conspirator Teresa Peguero, was returning from Aruba on Air Aruba. Perez and Peguero had flown out of Newark International Airport ("Newark") four days earlier and had purchased their tickets at the ticket counter with cash.

Based on the brevity of their trip and payment in cash, Air Aruba's station supervisor notified the United States Customs Service ("Customs"), now known as the United States Customs and Border Protection.

Customs, in turn, posted a "lookout" for Perez and Peguero at JFK on the date of their return and pulled them aside at the gate. Customs agents led Perez and Peguero to the customs hall, questioned them and searched their luggage. A Customs agent noted that, during routine questioning, Perez and Peguero appeared nervous and that Peguero appeared bulky. Perez and Peguero were separated and patted down. Customs agents discovered that Perez and Peguero each had strapped two packages strapped to their bodies. The packages contained a white, powdery substance that tested positive for cocaine.

Upon discovery of the packages on Perez's body, Perez stated that he thought the packages contained money. He asserted that he had been approached by a man named Raymond in the supermarket that Perez owned in Paterson, New Jersey, approximately one month before the flight to Aruba. According to Perez, Raymond told him that he had relatives in Aruba who owed him money and that he needed someone to pick up the money for him. Perez stated that Raymond promised to pay him $5,000 over Perez's expenses for making the trip. In Aruba, Perez claimed that a man named Antonio delivered a package of money to Perez and told him that

2

someone would meet Perez at JFK. Perez stated that he informed Peguero of the situation, and she agreed to carry two of the packages believing them to contain cash. Perez promised to pay Peguero $1,000 for her role.

Perez and Peguero were charged in a three-count indictment with conspiracy to import and to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(b)(1)(B), 963 and 960(b)(2)(B), importation of cocaine in violation of §§ 952(a) and 960(b)(2)(B) and possession with intent to distribute cocaine in violation of § 841(a)(1) and (b)(1)(B). Peguero pleaded guilty, and Perez continued to a jury trial.

At trial, Perez testified in his defense. His testimony centered on his account involving Raymond's request to retrieve money from Aruba. The jury was instructed on the theory of conscious avoidance, whereby the knowledge requirement of a statute is met when a defendant deliberately and consciously avoids learning the truth. The jury returned guilty verdicts on all counts.

At sentencing, the Government requested a two-level enhancement of Perez's base offense level for obstruction of justice. The Government argued that Perez testified falsely at trial when he claimed that he thought the packages contained money instead of cocaine. The Court declined to apply the

enhancement.  Moreover, the United States Probation Office ("Probation"), in a Presentence Investigation Report, recommended no downward adjustment to Perez's total offense level for acceptance of responsibility because he continued to deny his criminal conduct, and the Court accepted Probation's recommendation.  The Court sentenced Perez to sixty months' imprisonment, the mandatory minimum.[1]  Perez appealed, and, on December 1, 1998, the Second Circuit affirmed the Court.

**(2)**

Perez now brings the instant motion[2] based on ineffective assistance of counsel at sentencing.  In particular, Perez claims that counsel was ineffective for failing to argue that Perez was entitled to: (1) a downward adjustment for acceptance of responsibility, (2) a downward departure pursuant to the "safety valve" provision of 18 U.S.C. § 3553(f) or (3) a downward departure "due to the extraordinary hardship that would be placed on [his] employees in the event of [his] incarceration."[3]

---

[1] Perez has since served his sentence of imprisonment and supervised release.

[2] Perez's motion was dated November 30, 1999.  The Clerk of Court received it soon after, but due to some confusion did not file it until June 8, 2000.

[3] Perez owned and managed Las Canas Supermarket in Paterson, New Jersey, which employed eight full-time employees.

4

In documents dated August 1, 2000 ("supplemental documents"), Perez sought to supplement the instant motion. Perez claimed that, in addition to being ineffective at sentencing, counsel was ineffective at trial. First, Perez asserted that counsel failed to: (1) request documents relating to Perez's stay in Aruba on January 29, 1997, (2) call Raymond as a witness or (3) call Peguero as a witness. According to Perez, any of these actions would have bolstered his account that he thought that he was carrying cash. Regarding the documents Perez argued should have been presented at trial, Perez claimed that they would have tended to show that he and Peguero waited at the hotel for approximately two hours for Anthony to deliver the packages. How this was so, Perez does not explain.

Moreover, Perez faulted counsel for failing to: (1) convey any offers for plea agreements made by the Government, (2) subpoena credit card records which would have shown that Perez attempted to buy the airline tickets with a credit card, (3) convey to the Government Perez's offer to submit to a lie detector test, (4) conduct redirect examination of Perez to rehabilitate him after Perez got confused on cross, (5) object to the Government's use of his American Airlines ticket when he had switched his flight from Aruba to Air Aruba and (6) interview possible witnesses.

Perez explained that he did not include the allegations contained in the supplemental documents in his original motion because counsel's actions were unknown to him at the time he filed the instant motion.  According to Perez, counsel delayed handing Perez his case file until June 14, 2000, despite a number of requests and that he first discovered counsel's alleged deficiencies upon reviewing the case file.  In the exhibits attached to the supplemental documents, Perez included a letter dated March 29, 2000, to counsel requesting the case file.

By order dated August 9, 2007, the Court directed counsel to submit an affidavit detailing his communications with Perez regarding the case file and responding to Perez's allegations of ineffective assistance.[4]  Counsel filed an affidavit on October 17, 2007.

Regarding Perez's request for the case file, he stated that he was unaware of a request earlier than Perez's March 29, 2000, letter.  Regarding Perez's claim that counsel failed to conduct adequate legal research on the acceptance of responsibility, safety valve and extraordinary hardship issues at sentencing, counsel stated that, after almost ten years, he had no recollection of any efforts he may have taken to research a

---

[4] In the same order, the Court also dismissed Perez's claims that counsel was ineffective for failing to conduct a proper redirect examination of Perez and for failing to preserve the issue of the content of the jury instruction for appeal.

downward departure for Perez.  However, counsel stated that he would not have considered Perez to have been a candidate for a downward departure given the facts in the record.

Finally, counsel addressed Perez's allegations from the supplemental documents.  Counsel stated that he had no recollection whether Perez had asked him to speak with any potential witness, but that his standard practice was to speak to any potential defense witnesses that were available.  Next, he did not recall whether he had subpoenaed credit card records but noted from the transcript of his summation that credit records from a hotel in Aruba, which showed that Perez's credit card had been declined, were stipulated to.  Regarding the Government's offer of a plea deal, counsel did not recall whether any offers were made but stated that it is his "iron-clad practice to communicate to [his] clients any and all plea offers tendered by the Government."  Breitbart Aff. ¶ 6.  Finally, counsel stated that he could not recall whether he discussed the Government's offer of a lie-detector test but that he doubted one would have been offered.

**Discussion**

**(1)**

**Timeliness**

**a. The Original Motion**

The original motion, filed June 8, 2000, is timely, despite the Government's arguments to the contrary. Section 2255 imposes a one-year period of limitations that runs from the latest of one of four dates. The two dates relevant here are: (1) "the date on which the judgment of conviction becomes final," 28 U.S.C. § 2255(f)(1), and (2) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," 28 U.S.C. § 2255(f)(4). A movant's criminal judgment of conviction becomes final "when the time expires for filing a petition for certiorari [in the Supreme Court] contesting the appellate court's affirmation of the conviction." Clay v. United States, 537 U.S. 522, 525 (2003). A motion pursuant to § 2255 is timely "if deposited in the institution's internal mailing system on or before the last day for filing." Rules Governing Section 2255 Cases, Rule 3(d).

Here, the Second Circuit affirmed Perez's conviction and sentence on December 1, 1998. Time expired for petitioning for certiorari on March 1, 1999, and the one-year period of limitations ended on March 1, 2000. Perez dated the instant motion November 30, 1999, but it was not filed until June 8,

2000. However, in papers dated July 20, 2000, Perez stated that he personally delivered the instant motion to prison officials on November 30, 1999. The Government does not contest Perez's statement. Therefore, the original motion is timely.

**b. The Supplemental Documents**

**i. Due Diligence**

The supplemental documents filed by Perez on August 1, 2000, however are untimely.[5] The period of limitations may run from the "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Section 2255 "does not require the maximum feasible diligence, only 'due,' or reasonable diligence." Wims v. United States, 225 F.3d 186, 190 n.4 (2d Cir. 2000). However, due diligence would seem to require that a movant "consult his own memory of the trial proceedings." United States v. Battles, 362 F.3d 1195, 1198 (9th Cir. 2004).

Almost all of the facts Perez relied on in his attempt to supplement the instant motion took place at or before trial.

---

[5] Because the Government rested on its assertion that the original petition was untimely, it did not address the timeliness of the supplemental documents, in which Perez attempted to supplement his claims. Perez himself raises the issue, however, arguing that the one-year period of limitations should run from June 14, 2000, the day he received his case file from counsel.

9

Perez should have known, for example, that his counsel did not call certain witnesses, request or subpoena certain documents, convey offers to submit to a lie detector test, conduct redirect examination, object to evidence or interview possible witnesses. Moreover, Perez does not assert that he made a request for his papers earlier than March 29, 2000, and the letter dated that day appears, in its cordiality and tone, like a first request. That date is a year and four months after his judgment of conviction became final. Perez does not claim that anything prevented him from requesting his papers before that time. The supplemental claims were based on facts which a similarly-situated person exercising due diligence would have discovered. See Wims, 225 F.3d at 190. Therefore, the period of limitations did not run from the day Perez received his files.[6]

---

[6] Although courts ordinarily give movants notice of their intent to dismiss a motion pursuant to § 2255 on procedural grounds or an opportunity to be heard, the supplemental documents, in which Perez sets forth his efforts to obtain his papers and asks to be excused for lateness, show that Perez knew that he needed to show due diligence. See Spinale v. United States, 277 Fed. App'x 108, 109 (2d Cir. 2008) (affirming district court's sua sponte dismissal, without a hearing or notice, of a § 2255 motion because motion, filed by counsel, showed that movant attempted to show due diligence and had notice of the need to show due diligence). Moreover, given the passage of time and counsel's lack of any recollection of his communications with Perez, a hearing would be especially fruitless.

### ii. Relation Back

The supplemental documents may be timely if they relate back to the original petition. Cf. Hewitt v. Artuz, No. CV-99-5021(DGT), 2008 WL 3155133, at *5 (E.D.N.Y. Aug. 4, 2008) ("Any claims raised for the first time in an amended [§ 2254] petition filed outside the limitation period must relate back to the original petition to be timely under Rule 15 of the Federal Rules of Civil Procedure."). An amendment relates back when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Construing the meaning of "conduct, transaction, or occurrence" in the habeas setting, the Supreme Court held that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." Mayle v. Felix, 545 U.S. 644, 664 (2005).

In the ineffective assistance of counsel context, "a new . . . claim does not relate back to an earlier one that relied on a different type of attorney malfeasance." Jenkins v. Graham, No. 06 Civ. 10200(CM)(JCF), 2009 WL 1119383, at *2 (S.D.N.Y. Apr. 23, 2009) (denying petitioner's motion to amend when earlier claim and later claim faulted appellate counsel for failing to make two distinct arguments). In Jenkins, the petitioner's original claim of ineffective assistance of counsel was based on

appellate counsel's failure to argue that the trial counsel was ineffective for failing to preserve the issue of retaliatory sentencing for appeal.  Id. at *1.  In his motion to amend, the petitioner's claim of ineffective assistance of counsel was based on appellate counsel's failure to argue that trial counsel was ineffective for failing to object to the validity of the indictment.  Id.  The court held that the new claim did not relate back even though both claims were based on appellate counsel's failure to argue the ineffectiveness of trial counsel. Id. at *3.

Here, Perez's new claims of ineffective assistance of counsel are entirely distinct from his old claims.  Although the original claims are based on trial counsel's ineffectiveness at sentencing, his new claims are based on trial counsel's ineffectiveness before conviction.  The two sets of claims are clearly not tied to a common core of operative fact.  Thus, the new claims do not relate back to the original claims and are dismissed.

**(2)**

**Timely Ineffective Assistance of Counsel Claims**

In Perez's original motion, he claims that trial counsel was ineffective for failing to argue for: (1) a downward adjustment for acceptance of responsibility, (2) a downward departure

appellate counsel's failure to argue that the trial counsel was ineffective for failing to preserve the issue of retaliatory sentencing for appeal.  Id. at *1.  In his motion to amend, the petitioner's claim of ineffective assistance of counsel was based on appellate counsel's failure to argue that trial counsel was ineffective for failing to object to the validity of the indictment.  Id.  The court held that the new claim did not relate back even though both claims were based on appellate counsel's failure to argue the ineffectiveness of trial counsel. Id. at *3.

Here, Perez's new claims of ineffective assistance of counsel are entirely distinct from his old claims.  Although the original claims are based on trial counsel's ineffectiveness at sentencing, his new claims are based on trial counsel's ineffectiveness before conviction.  The two sets of claims are clearly not tied to a common core of operative fact.  Thus, the new claims do not relate back to the original claims and are dismissed.

**(2)**

**Timely Ineffective Assistance of Counsel Claims**

In Perez's original motion, he claims that trial counsel was ineffective for failing to argue for: (1) a downward adjustment for acceptance of responsibility, (2) a downward departure

appellate counsel's failure to argue that the trial counsel was ineffective for failing to preserve the issue of retaliatory sentencing for appeal.  Id. at *1.  In his motion to amend, the petitioner's claim of ineffective assistance of counsel was based on appellate counsel's failure to argue that trial counsel was ineffective for failing to object to the validity of the indictment.  Id.  The court held that the new claim did not relate back even though both claims were based on appellate counsel's failure to argue the ineffectiveness of trial counsel. Id. at *3.

Here, Perez's new claims of ineffective assistance of counsel are entirely distinct from his old claims.  Although the original claims are based on trial counsel's ineffectiveness at sentencing, his new claims are based on trial counsel's ineffectiveness before conviction.  The two sets of claims are clearly not tied to a common core of operative fact.  Thus, the new claims do not relate back to the original claims and are dismissed.

**(2)**

**Timely Ineffective Assistance of Counsel Claims**

In Perez's original motion, he claims that trial counsel was ineffective for failing to argue for: (1) a downward adjustment for acceptance of responsibility, (2) a downward departure

appellate counsel's failure to argue that the trial counsel was ineffective for failing to preserve the issue of retaliatory sentencing for appeal.  Id. at *1.  In his motion to amend, the petitioner's claim of ineffective assistance of counsel was based on appellate counsel's failure to argue that trial counsel was ineffective for failing to object to the validity of the indictment.  Id.  The court held that the new claim did not relate back even though both claims were based on appellate counsel's failure to argue the ineffectiveness of trial counsel. Id. at *3.

Here, Perez's new claims of ineffective assistance of counsel are entirely distinct from his old claims.  Although the original claims are based on trial counsel's ineffectiveness at sentencing, his new claims are based on trial counsel's ineffectiveness before conviction.  The two sets of claims are clearly not tied to a common core of operative fact.  Thus, the new claims do not relate back to the original claims and are dismissed.

**(2)**

**Timely Ineffective Assistance of Counsel Claims**

In Perez's original motion, he claims that trial counsel was ineffective for failing to argue for: (1) a downward adjustment for acceptance of responsibility, (2) a downward departure

pursuant to the "safety valve" provision of 18 U.S.C. § 3553(f) or (3) a downward departure based on the hardship that would befall his employees if he were incarcerated.  To establish ineffective assistance a movant must show that: (1) counsel failed to provide "reasonably effective assistance" as guided by "prevailing professional norms" and (2) "that the deficient performance prejudiced the defense."  Strickland v. Washington, 466 U.S. 668, 680, 687, 688 (1984).

### a. Acceptance of Responsibility

Counsel's failure to argue for a reduction of Perez's offense level based on acceptance of responsibility does not provide grounds for relief.  Section 3E1.1 of the Federal Sentencing Guidelines ("Guidelines") entitles a defendant to have his base offense level reduced two levels.  However, a defendant is not entitled to a reduction under § 3E1.1 if the defendant "puts the government to its burden of proof at trial by denying the essential factual elements of guilt."  Guidelines Manual § 3E1.1 cmt. n.2.

Perez put the government to its burden of proof at trial and never admitted fault for importing drugs.  Any request by counsel for a base-level reduction for acceptance of responsibility would have been frivolous.  Thus, counsel was not ineffective for failing to make it.

**b. Safety Valve**

Perez's claim that counsel was ineffective for failing to argue for a downward departure pursuant to the safety valve provision of 18 U.S.C. § 3553(f) similarly fails.  Section 5C1.2 of the Guidelines allows courts to sentence defendants beneath the mandatory minimum if the defendant meets the criteria of § 3553(f).  In relevant part, by the time of sentencing, the defendant must have "truthfully provided to the Government all information and evidence the defendant ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  Guidelines Manual § 5C1.2(5). "The disclosure obligation imposed by the safety-valve provision is different [from that imposed by the acceptance-of-responsibility provision of the Guidelines], for § 3553(f)(5) requires more than accepting responsibility for one's own acts." United States v. Conde, 178 F.3d 616, 622 (2d Cir. 1999) (internal quotation marks and citations omitted).  Perez made no such disclosure.  Indeed, he refused to admit his own involvement in the offense and continued to maintain his innocence. Therefore, he was not eligible for the safety valve, and counsel was not ineffective for not arguing for it.

**c. Hardship to Employees**

Likewise, Perez cannot show that counsel was ineffective for failing to argue for a downward departure based on the "extraordinary hardship" that would be placed on his employees in the event of his incarceration. District courts have discretion to depart from the Guidelines when a case falls outside the "heartland" of the typical cases addressed by the Guidelines. See United States v. Jones, 531 F.3d 163, 171 n.4 (2d Cir. 2008). Thus, for example, district courts may downwardly depart when familial or parental duties are extraordinary and imprisonment would "wreak extraordinary destruction on dependents." United States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992).

In United States v. Milikowsky, 65 F.3d 4 (2d Cir. 1995), the Second Circuit recognized district courts' authority to downwardly depart to avoid imprisoning a defendant when imprisonment would cause extraordinary hardship on the defendant's employees. The defendant in Milikowsky, a principal in two steel-related businesses, was convicted of violating the Sherman Act. Id. at 6. His businesses employed more than 150 people. Id. at 8-9. Before sentencing, the defendant submitted letters which established that, for one of his businesses, he was the sole buyer of all steel, the most successful seller and the only contact the business had with customers and suppliers. Id. at 8. The record also showed that at the defendant's other

15

business, "the cost advantage attributable to his expertise is virtually the only reason [the business] remains a viable operation." Id. Lastly, the record established that without the defendant, his businesses would likely be forced into bankruptcy. At sentencing, the applicable Guidelines range required at least some imprisonment. Id. at 6. However, the district court granted the defendant's request for a downward departure based on the extraordinary impact his imprisonment would have had on his employees and sentenced him to a term of probation. Id. The Second Circuit, extending to the employment context its holdings that extraordinary familial hardship warrants downward departure, affirmed the district court. Id. at 9; see id. at 7-8 (applying the reasoning of Johnson, 964 F.2d at 124-30, to the antitrust and employment context).

Perez cannot demonstrate extraordinary hardship imposed on his employees. Unlike the steel businesses in Milikowsky, Perez's supermarket did not require his expertise or personal knowledge to stay in business. Moreover, if the supermarket were to have gone out of business, its closing would have affected only four employees, far fewer than 150 employed by the defendant in Milikowsky. Lastly, Perez could not establish that his presence was indispensable to his supermarket's financial viability. Accordingly, counsel was justified in not arguing for a downward departure based on extraordinary hardship to Perez's

16

employees.  In any event, it could not have succeeded since he was subject to the mandatory minimum.

## Conclusion

Petitioner has shown no basis for relief under § 2255, and, therefore, his motion is denied.  In addition, because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c).


Dated:    Brooklyn, New York
          June 8, 2009

SO ORDERED:

_____/s/_____
David G. Trager
United States District Judge